**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Freeman BAXLEY, Defendant–
Appellant.**

**No. 90–10620.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1992.

Decided Dec. 9, 1992.

Monte Morris, Henderson, NV, for defendant-appellant.

Rimantas Rukstele, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: REINHARDT, NOONAN, and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

On December 7, 1989, a federal grand jury in Las Vegas, Nevada indicted Freeman Baxley for transporting a stolen vehicle across state lines. Baxley had leased the car in Las Vegas sometime earlier and driven it to his home in Arlington, Texas.[1] Baxley was arrested and transported from Texas to Nevada by the authorities.

In Nevada, Baxley was released on a personal recognizance bond with various special conditions attached. One of the conditions was that Baxley reside at the Clark Center, which is a halfway house in Las Vegas. Later, he signed an agreement to adhere to the rules and regulations of the Center. The Center permitted Baxley to come and go as he pleased during the day as long as he logged the time, duration, and purpose of his visits to the outside world.

On March 1, 1990, Baxley attempted to obtain a modification of his release conditions and leave the Clark Center. The district court ordered that Baxley be released from the Center upon his posting of a $10,000 bond or $2,000 cash. Baxley did neither.

---

1. Baxley evidently took Las Vegas' reputation as the home of, *inter alia,* fast cars too literally: the car he rented (and subsequently failed to return) was a Chevrolet Corvette, a vehicle with a top speed of approximately 180 miles per hour. *See* Paul Dean, *For Just $50,000, Leave a Ferrari in Your Rear View Mirror, Los Angeles Times,* May 26, 1989 (Part 5), at 1 (describing performance of 1990 ZR–1) (including color photo).

On May 11, 1990, Baxley signed out of the Clark Center, as he often did. This time, however, he did not return; instead, he went to live with his sister at her home in Las Vegas. Because Baxley did not return to the Clark Center within two hours of his estimated time of return, the Center listed him as an "escapee". Although he attempted to contact the Center several times, Baxley was unable to talk to his case worker. While awaiting trial on the charge of interstate transportation of a stolen automobile—which was then scheduled for May 21, 1990—Baxley lived with his sister and remained in contact with his attorney. Baxley's attorney informed him that a calendar call was scheduled for May 16, 1990, but that Baxley was not required to attend court on that day. On May 16th, when the judge was informed that Baxley no longer resided at the Clark Center, he cancelled the May 21st trial date and issued a warrant for Baxley's arrest.

Baxley called his attorney again on May 17th, at which time his attorney allegedly informed him of the events of the previous day. On May 24th, a two-count indictment was filed against Baxley that charged him with "escape" in violation of 18 U.S.C. § 751(a) and "failure to appear" in violation of 18 U.S.C. § 3146(a)(1). On May 29th, Baxley left Las Vegas and returned to his home in Texas, where he was arrested again seven days later. Baxley was tried before a jury on the escape count on August 30, 1990—the government had dismissed the "failure to appear" count the previous day. The jury found Baxley guilty as charged, and he was sentenced on November 20, 1990 to a term of incarceration of one year and one day and three years of supervised release.[2] Baxley was given credit for the 262 days that he had

been in custody prior to the imposition of sentence. Long before oral argument was held he completed his sentence of incarceration; he is now on supervised release.

Baxley raises two contentions on appeal: first, that he was not in "custody" and hence could not be found guilty of "escape" from such confinement under 18 U.S.C. § 751(a); and, second, that the evidence at his trial was insufficient to establish beyond a reasonable doubt that he "willfully" escaped. We find the first contention to be meritorious and reverse his conviction; accordingly, we need not reach the second.

I.

■ As a preliminary matter, the government argues that Baxley cannot raise the "custody" issue on appeal because it was not raised in the district court. The government is incorrect. The issue of whether Baxley was in "custody" within the meaning of 18 U.S.C. § 751 was discussed extensively at trial; indeed, his contention that he was not in custody constituted his main argument why he could not be found guilty of escape. The "custody" issue was so central to Baxley's trial that the prosecutor himself stated (immediately before the jury returned its verdict) that "quite frankly, I was anticipating a note [from the jury requesting] an explanation of the definition of custody". [RT III–3] Moreover, the issue of what "custody" legally entails was a key part of the dispute between the parties in jury instruction matters as well as in other areas of the trial. [RT II, 235–41] Baxley thus unquestionably raised those issues before the district court.[3]

---

**2.** Baxley pled guilty to the previous charge of Interstate Transportation of a Stolen Motor Vehicle, and the two charges were consolidated for purposes of sentencing.

**3.** In several previous *civil* cases we have found issues to have been raised below despite the fact that they were discussed far less frequently and in a more roundabout fashion than the "custody" issue here. *See, e.g., Jordan v. Clark,* 847 F.2d 1368, 1374 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989);

*Morrison v. Char,* 797 F.2d 752, 756–57 (9th Cir.1986); *Trustees of Amalgamated Ins. v. Geltman Industries,* 784 F.2d 926, 931 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). The standard concerning what suffices to "raise" an issue below is justifiably more lenient in criminal cases, where the liberty (and perhaps even life) of a defendant may be fundamentally affected by procedural errors.

■ The government nevertheless contends that even if Baxley raised the custody issue below, he cannot appeal it because he did not formally move for a judgment of acquittal under *Fed.R.Crim.* P. 29. That assertion is incorrect. Baxley's contention that he was not legally in "custody" and hence could not be punished under 18 U.S.C. § 751 does not constitute a claim of insufficiency of the evidence; rather, it is a claim that the statute does not define his conduct as criminal and that he therefore may not be convicted of that offense.[4] That claim is determined exclusively by Baxley's legal status at the time of his alleged "escape": it is a matter of law and is not dependent for its resolution on the evidence adduced at trial. Thus it was not necessary for Baxley to make a Rule 29 motion in order to preserve his claim that he was not in custody.

■ In addition, it is clear in any case that Baxley effectively *did* make a Rule 29 motion for acquittal sufficient to preserve his right to appeal on the ground of sufficiency of the evidence. After the government had closed its case, the following exchange between the district judge and Baxley's attorney occurred:

THE COURT: I wanted to bring the parties to sidebar and find out: Do you have any motions that you wish to make at this time? I realize that you may want to make for the record a Rule 29 motion for judgment of acquittal.

MR. MORRIS (Baxley's attorney): No, I think that motion …

THE COURT: I think looking at the evidence in light most favorable, of the evidence I have, that this is a jury case. And I would deny that motion. But I didn't want to deprive you the chance to make that. So your record is clear....

Baxley's attorney's statement tends to suggest that he was not inclined to make a Rule 29 motion; however, the district judge did not permit him to complete his sentence. It may be that Baxley's counsel was going to make the motion "for the record" in spite of his belief that the motion would be denied. We simply do not know. In any case, despite the ambiguous nature of Baxley's Rule 29 request, the district judge explicitly considered and denied the motion: it would be unreasonable to require Baxley to attempt to raise the issue (and possibly the judge's ire) yet again in order to preserve it for appeal. Moreover, because the interchange with Baxley's attorney clearly brought the Rule 29 issue to the district judge's attention, that issue was sufficiently preserved for appeal.[5] Accordingly, Baxley's effective assertion of a Rule 29 motion permits him to raise that issue in this Court.[6]

## II.

■ Although Baxley was charged with "failure to appear" in violation of 18 U.S.C.

4. In constitutional terms, such a claim would be that the Due Process Clause prohibits the government from punishing him for his conduct under the statute which he was charged. *See Jordan v. DeGeorge,* 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951).

5. *See In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir.1989) (noting that all that is required in order to preserve an issue for appeal is that the argument "be raised sufficiently for the trial court to rule on it" and finding issue raised because party "brought up all of the facts necessary to support the arguments" because although the "court did not rule on [the issue].... it could have"); *see also Bornholdt v. Brady,* 869 F.2d 57, 68 (2nd Cir.1989) (finding issue raised because although appellant "did not expressly argue [the issue], [he] plainly brought to the district court's attention all of the facts pertinent to such an argument").

6. Although we have previously held that a Rule 29 motion should be renewed at the close of the government's evidence, *see United States v. Comerford,* 857 F.2d 1323, 1324 (9th Cir.1988) (per curiam), that rule is not required by statute or by the text of Rule 29 itself, and we have the discretion to depart from it in appropriate circumstances. *See People of the Territory of Guam v. Okada,* 694 F.2d 565, 570 n. 8 (9th Cir.1982); *United States v. Jeffery,* 473 F.2d 268, 270–71 & n. 4 (9th Cir.), *cert. denied,* 414 U.S. 818, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973). Indeed, we are *required* to exercise that discretion under certain circumstances. *See In re Wind Power Systems, Inc.,* 841 F.2d 288, 290 n. 1 (9th Cir. 1988) (noting that we have "the power and the discretion" to do so and that we *"will* exercise that discretion" in given circumstances) (emphasis added). Precisely such an exception is appli-

§ 3146(a)(1), the government dropped that count on the eve of trial and proceeded against him solely on the count alleging that he violated 18 U.S.C. § 751(a). That statute provides that

> "[w]hoever escapes from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court ... shall, if the custody or confinement is by virtue of an arrest on a charge of felony ... be fined not more than $5,000 or imprisoned not more than five years, or both...."

The issue now before us is whether Baxley was "in custody" as that term is used in § 751(a) at the time he left the Clark Center. If he was not, then he could not be found guilty of "escape" under that statute. *See also United States v. Bailey*, 444 U.S. 394, 408, 100 S.Ct. 624, 633, 62 L.Ed.2d 575 (1980) (defining escape under § 751(a) as "absenting oneself from custody without permission").

To support its view that Baxley was "in custody" at the Clark Center, the government relies primarily upon our decision in *Brown v. Rison*, 895 F.2d 533 (9th Cir. 1990), in which we held that forced residence in a halfway house qualified as custody for purposes of providing a defendant with credit for time served awaiting trial. *See id* at 535.[7] However, that case is inapposite here. *Brown* involved the interpretation of the term "custody" as it was used in 18 U.S.C. § 3568: as we explicitly noted in that case, "the term 'custody' may vary in meaning when used in different contexts." *Id.* Here, we are faced with the interpretation of "custody" as used in 18 U.S.C. § 751(a)—an entirely different statute with entirely different import and purposes than § 3568. Although forced residence in a particular facility might well qualify as "custody" in § 3568 for purposes of determining credit for time spent in pre-trial detention, it by no means follows that an individual who leaves such a facility, in addition to losing his time-spent credits, is guilty of felony escape under § 751. Thus, *Brown* and other § 3568 (and § 3585) cases are not dispositive of this appeal. *See also Tyree v. Taylor*, 965 F.2d 773, 773–74 (9th Cir.1992) (interpreting *Brown* and applying it to § 3585 cases).

Baxley was assigned to the Clark Center not as part of his sentence after trial, but pursuant to the conditions of a personal recognizance bond.[8] The restrictions on Baxley's activities were slight: he was required to report regularly to pretrial services and was subject to travel limitations, but he could remain employed (indeed, he was *required* to be employed) and could come and go during the day as he pleased, as long as he logged the time, purpose, and duration of his trips away from the Center. In no way did Baxley's "conditions of confinement approach[ ] those of incarceration," *Grady v. Crabtree*, 958 F.2d 874, 875 (9th Cir.1992) (per curiam), sufficient to constitute "custody" under § 751(a).

The conditions of Baxley's release were much more analogous to probation than they were to imprisonment or "custody". Like Baxley, individuals on probation are conditionally released from incarceration, must maintain a particular residence or notify the court of changes, are subject to travel restrictions, and must report regularly to government officials. If an individ-

---

cable here. *See infra* text accompanying notes 7–8.

**7.** Section 3568, which was at issue in *Brown*, has since been repealed and has been replaced by 18 U.S.C. § 3585. *See Mills v. Taylor*, 967 F.2d 1397, 1399 (9th Cir.1992). We nevertheless have reaffirmed our decision in *Brown* as applicable to determinations under the new statute as well. *See id.* at 1399–1401.

**8.** That fact, among others, distinguishes the present case from dicta in *United States v. Jones*, 569 F.2d 499 (9th Cir.), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 407 (1978), which involved *post-incarceration* release to a halfway house; which gave an interpretation of the term as it was used in an entirely different statute (18 U.S.C. § 4082(d)); and which addressed only an issue involving jury instructions and not the question presented here.

ual violates probation, he is not tried for escape; rather, his probation is revoked, and he can be indicted for escape only if he *thereafter* fails to report for custodial incarceration. *See United States v. Keller,* 912 F.2d 1058, 1060–61 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 982, 112 L.Ed.2d 1067 (1991). Thus, although Baxley risked revocation of his personal recognizance bond when he violated a condition of his release by his failure to return to the Clark Center, he did not escape from "custody" as that term is defined in 18 U.S.C. § 751(a).

Finally, the "Order Setting Conditions of Release" entered by the district court that directed Baxley to the Clark Center and upon which his conviction for "escape" is necessarily based clearly indicates that Baxley was not intended to be "in custody" while in residence at that institution. That Order was executed on an Administrative Office form used for the issuance of such orders, and contains a variety of release conditions that can be marked and thereby imposed by the judge. In the present case, the district court judge checked only the boxes that required Baxley to engage in particular actions.[9] The district judge did *not* check the box that stated that "the defendant is placed in the custody of" a given institution: that portion of the form was left blank. If the judge had intended to place Baxley in custody, he would have marked the box that explicitly provided for such custodial incarceration. He did not do so: we can only conclude—as Baxley may have—that whatever restrictions were placed by the district court on Baxley's conduct, he was not "in custody" at the Clark Center as would be necessary in order for us to uphold a conviction for "escape" under 18 U.S.C. § 751(a).

■ Our analysis is bolstered by the application of the rule of lenity. In interpreting the substantive ambit of criminal prohi-

bitions, ambiguities must be resolved in favor of the criminal defendant. *See United States v. Batchelder,* 442 U.S. 114, 121, 99 S.Ct. 2198, 2202–03, 60 L.Ed.2d 755 (1979); *Simpson v. United States,* 435 U.S. 6, 14, 98 S.Ct. 909, 913–14, 55 L.Ed.2d 70 (1978); *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). As we mentioned in *Brown,* the term "custody" is ambiguous; its meaning varies depending on the context in which it is used and in the statutory scheme in which it arises. *See Brown,* 895 F.2d at 535. We hold that the use of that term in § 751(a) does not permit Baxley's prosecution for escape, given the circumstances of his residence at the half-way house. Even were we to find an alternative construction of "custody" to be superior, the interpretation we give to that term here is, at the very least, entirely plausible in the statutory scheme envisioned by § 751(a). Accordingly, we would be required to give effect to the more lenient interpretation of that term and reverse Baxley's conviction even were we to prefer the more stringent interpretation.

Put simply, Baxley did not escape from "custody": his conviction for violating 18 U.S.C. § 751(a) therefore cannot stand. Because Baxley's acts were not a crime under the statute with which he was charged, we reverse his conviction.

REVERSED.

---

**9.** The Order required Baxley to appear at his trial proceedings, seek employment, remain in Clark County, report regularly to Pretrial Services, maintain residence at the Clark Center and "notify Pretrial of changes", obtain no passport, take drug and alcohol tests, and permit searches of his person, residence, and vehicle.