57 F.3d 1078
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald WINN, Defendant-Appellant.
 No. 94-50386.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided May 26, 1995.
 
 1
 Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Ronald Winn appeals his convictions for escape and transporting illegal aliens. We have jurisdiction and affirm.
 
 BACKGROUND
 
 4
 Winn was returned to custody for violating conditions of parole for a prior conviction and subsequently was transferred to a halfway house. Although Winn was scheduled for release from the halfway house on June 7, 1993, his release was postponed because of his misconduct and failure to secure employment. On July 10, 1993, before the Parole Commission had set a new release date, Winn left the halfway house and did not return. Winn was arrested shortly after midnight on August 30, 1993, just north of the Mexican border. Border Patrol agents had stopped a van in which Winn was a passenger and found four illegal aliens in the back.
 
 
 5
 Winn was indicted in one count for escape, in violation of 18 U.S.C. Sec. 751(a), and in two counts for transporting illegal aliens, in violation of 8 U.S.C. Sec. 1324(a)(1)(B). Two of the four illegal aliens were released for return to Mexico, and two were held as material witnesses. Winn's attorney subsequently reported to the U.S. Attorney that Winn had reached a plea agreement with prosecutors. Shortly thereafter, Winn stipulated to the release of one of the remaining material witnesses. Winn ultimately rejected his plea agreement, and the case proceeded to trial. By stipulation of the parties, Javier Lopez-Medina, the remaining material witness, was deposed on videotape before trial and released to Mexico.
 
 
 6
 After a jury trial on the alien smuggling counts and a bench trial on the escape count, Winn was convicted of all counts and sentenced to three concurrent sentences of 48 months in prison and three years of supervised release.
 
 DISCUSSION
 I. Conviction for Escape
 
 7
 Winn claims that we must reverse his conviction for escape because he was not in "custody" as required by 18 U.S.C. Sec. 751(a). We disagree. A federal prisoner in a halfway house program commits the offense of escape when he willfully violates the terms of his extended confinement. United States v. Jones, 569 F.2d 499, 500 (9th Cir.), cert. denied, 436 U.S. 908 (1978).
 
 
 8
 Winn's reliance on United States v. Baxley, 982 F.2d 1265, 1268 (9th Cir. 1992), is misplaced. In Baxley, we held that a person confined to a halfway house as a condition of bond prior to trial was not in custody for purposes of Sec. 751(a) and distinguished Jones because a person detained before trial pursuant to a bond was in the same position as a parolee who risked revocation of parole if he violated his parole terms. Id. at 1269 & n.8. Contrary to Winn's argument, Winn was not in the same position as a parolee simply because the Parole Commission had final say over his release. He was not yet on parole. He was still subject to incarceration in prison but had been placed in a halfway house to prepare him for reentry to society when released on parole. Our rationale in Baxley was that Congress did not intend Sec. 751(a) as a punishment for persons who violated conditions of parole or bail because the government already had authority to punish them by revoking their bail or parole. The government has no such authority over a halfway house resident who violates the terms of his confinement.[1]
 
 
 9
 Winn argues, however, that even if he could be charged with escape under Sec. 751(a), his indictment was flawed because it failed to mention 18 U.S.C. Sec. 4082. Winn cites no authority for the proposition that an indictment for an escape from a halfway house under Sec. 751(a) must also mention Sec. 4082, and we do not impose such a requirement. Section 4082 clearly states that a person who escapes from extended confinement may be charged under the provisions of chapter 35, which includes Sec. 751(a). Therefore, there is no need to refer to Sec. 4082 in an indictment under Sec. 751(a).
 
 
 10
 We also reject Winn's argument that the district court abused its discretion in admitting two documents evidencing the parole violations for which Winn was incarcerated, because the documents were not properly authenticated. The district court permitted the government to introduce a certified copy of a Parole Commission Warrant dated May 8, 1990, and a Marshal's Return dated June 4, 1993, to establish a chain of custody linking Winn's escape to his 1986 alien smuggling conviction. The documents were accompanied by a certificate from Sandra Opeka of the Parole Commission, certifying that the warrant and return were copies of "document[s] relating to Ronald Winn ... contained in his official file record" at the Parole Commission.
 
 
 11
 Ms. Opeka's certificate was sufficient to authenticate the documents under Bayless v. United States, 381 F.2d 67, 73 (9th Cir. 1967) (clerk's certificate provided adequate authentication even though clerk did not state that clerk had "custody" of original documents, but stated only that originals were "on file" in clerk's office). Winn claims that the certification was insufficient because it did not state that the official had custody of the "original" document. However, Fed. R. Civ. P. 44, applied to criminal cases through Fed. R. Crim. P. 27, states that an official record "may be attested by the officer having the legal custody of the record, or by the officer's deputy, and accompanied by a certificate that such officer has the custody." The rule does not mention the term "original." Because the certification accompanying Winn's warrant and marshal's return states that the copy is of a document "in his official file record," it is adequate under Rule 27 and Bayless.
 
 
 12
 II. Convictions for Transporting Illegal Aliens
 
 A. Eyewitness Identification
 
 13
 Winn argues that the district court erred in admitting a portion of Lopez-Medina's videotaped deposition testimony in which he identified Winn. However, even if we were to hold that Lopez-Medina's identification was so unreliable that the district court abused its discretion in admitting it, see United States v. Gregory, 891 F.2d 732, 734 (9th Cir. 1989), we nevertheless will affirm a conviction if the government shows that the resulting prejudice more probably than not was not harmless. United States v. Rahm, 993 F.2d 1405, 1415 (9th Cir. 1993).
 
 
 14
 The government has met that burden here. Independent of his subsequent identification of Winn, Lopez-Medina stated that after he crossed the border, he watched the alien smuggler who was helping him enter the United States negotiate with an African-American male wearing a white baseball cap. Lopez-Medina stated that the man in the hat told him and the other three aliens to get into the van, and opened and closed the van door for them. Border Agent Machado testified that he saw a man in a white hat in the passenger seat of the van before he pulled the van over. Border Agent McDermott testified that, after the van was pulled over, Winn emerged from the passenger's side of the van wearing a white baseball cap. The district court's admission of Lopez-Medina's identification of Winn, even if erroneous, was more likely than not harmless.
 
 B. Rule 404(b) Evidence
 
 15
 Winn argues that the district court should not have admitted evidence of Winn's two prior arrests for alien smuggling. The district court permitted the government to introduce the testimony of two Border Patrol agents who had stopped cars driven by Winn at the border in 1985 and 1986 and found illegal aliens in the trunk. On each occasion, Winn gave an alias. The district court admitted the evidence pursuant to Fed. R. Evid. 404(b) to demonstrate Winn's intent and to refute his claim that, although he was in the van, he did not participate in the alien transporting.
 
 
 16
 The district court did not abuse its discretion. See United States v. Garcia-Orozco, 997 F.2d 1302, 1304 (9th Cir. 1993) (standard of review is for abuse of discretion). We employ a four-part test in applying Rule 404(b): Evidence will be admitted if (1) it tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged. United States v. Corona, 34 F.3d 876, 881 (9th Cir. 1994).
 
 
 17
 Winn's prior arrests tended to prove that Winn actively participated in the transport of illegal aliens. We have repeatedly upheld the admission of evidence of prior bad acts to refute an "innocent dupe" defense. United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985); United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325-26 (9th Cir. 1992); United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.), cert. denied, 501 U.S. 1234 (1991). Although Winn contends that these cases are inapplicable because he admitted knowledge that the passengers were illegal aliens, Winn's claim that he was present but not actively involved was a variation of the innocent dupe defense, and evidence of his prior arrests tended to refute his claim.
 
 
 18
 Turning to the second factor, Winn's seven and eight-year-old arrests were not too remote to preclude admission. See e.g., United States v. Ono, 918 F.2d 1462, 1465, n.2 (9th Cir. 1990) (seven-year-old conviction not too remote); United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen-year-old conviction admissible), cert. denied, 494 U.S. 1083 (1990). Moreover, Winn's incarceration for a significant portion of the time between his 1986 arrest and the charged offense in 1993 weighs against labeling the prior arrests as too remote.
 
 
 19
 As to the third factor, the evidence was sufficient to find that Winn had engaged in prior acts of smuggling. Although Winn argues that the prosecution should have introduced convictions rather than arrests, the testimony of the border agents was not challenged by Winn and, therefore, was sufficient.
 
 
 20
 Finally, the prior acts were sufficiently similar to the charged offense to suggest Winn's personal participation in the offense. Although the three occurrences were not entirely identical, on all three occasions Winn was stopped in a vehicle at or near the border that was carrying illegal aliens. See Ramirez-Jimenez, 967 F.2d at 1326 ("prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence").
 
 
 21
 Winn argues that, even if the evidence was admissible under Rule 404(b), the district court should have excluded it because its probative value was substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. As we stated in Ramirez-Jiminez, 967 F.2d at 1327, evidence of prior involvement in alien smuggling is "not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury." The district court did not abuse its discretion in admitting the testimony.
 
 C. Miranda Claim
 
 22
 Agent McDermott testified that when he asked Winn his name shortly after his arrest, Winn produced identification with the name of Lee Andrew Bilberry. After McDermott found other identification in Winn's wallet with his real name, he ran a computer check, confirmed Winn's correct name, and confronted Winn with the inconsistency. McDermott testified that Winn responded, "If you got enough to charge me, motherfucker, do it, otherwise, leave me alone." Winn argues that the district court should not have admitted this evidence because it was obtained through custodial interrogation prior to agents' providing required Miranda warnings.
 
 
 23
 We reject this argument because McDermott did not "interrogate" Winn. Custodial questioning constitutes interrogation only if the questions are reasonably likely to elicit an incriminating response. United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981). We review for clear error the district court's determination that McDermott's questioning did not constitute interrogation. Id. at 1237-38.
 
 
 24
 The routine gathering of background biographical data is not interrogation for purposes of determining whether Miranda warnings are required. Id. at 1238. Although we have recognized the potential for abuse by law enforcement officers who might deliberately elicit an incriminating statement from a suspect under the guise of obtaining neutral information, id., the district court did not clearly err in determining that no such abuse occurred here.
 
 
 25
 Winn argues that McDermott knew Winn's true identity as soon as he fingerprinted him, and thus had no reason to continue asking his name except to obtain incriminating statements. However, Winn cites no authority for the novel proposition that a question constitutes interrogation unless the government proves that the question was indispensable to some other purpose. Confrontation with evidence of an arrestee's true identity after he has produced false identification does not in every case constitute interrogation. Cf. United States v. Poole, 794 F.2d 462, amended, 806 F.2d 853 (9th Cir. 1986) (asking detainee his name was interrogation in the context of a coercive interview where officer confronted detainee with evidence implicating him in a bank robbery and should have anticipated a defensive response).
 
 
 26
 D. Sixth Amendment Right To Confront Witnesses
 
 
 27
 Winn claims that the government violated his Sixth Amendment right to confront witnesses by failing to disclose that it had agreed not to prosecute the material witnesses. However, Winn has failed to produce any evidence suggesting that any such agreements existed. Winn relies on a statement in the government's post-trial motion that the material witnesses "were not criminally charged, pursuant to the long-established practice in this district." However, a "long-established practice" is not an agreement. If anything, a policy of not charging material witnesses renders unnecessary an agreement not to prosecute. The district court did not clearly err in determining that there were no agreements between the government and the material witnesses. See United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir. 1991) (clearly erroneous standard of review).
 
 
 28
 E. Bad Faith Destruction of Exculpatory Evidence
 
 
 29
 We reject Winn's claim that the district court should have dismissed the indictment because the government violated his right to due process by destroying the dispatch tapes from the night of the arrest, selling the van used to transport the illegal aliens, losing the hat and identification allegedly seized from Winn, and releasing the material witnesses.
 
 
 30
 The destruction of exculpatory evidence violates due process if the evidence's exculpatory value was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479, 489 (1984). The defendant must demonstrate that the government acted in bad faith in failing to preserve the evidence. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).
 
 
 31
 The government sold the van and returned the dispatch tape to service shortly after Winn's attorney informed the government that the case had been settled. In light of the reported settlement, the excuplatory value of this evidence was not apparent and the government did not act in bad faith.
 
 
 32
 Although the white hat allegedly seized from Winn possibly could have been used to refute the government's claim that Winn was the man described by Lopez-Medina, Winn has failed to show that the government lost or destroyed the hat or false identification in bad faith.
 
 
 33
 Finally, Winn cannot complain about the return of the material witnesses to Mexico because he stipulated to the return of one and failed to object to the return of the other.
 
 F. Sufficiency of the Evidence
 
 34
 Winn argues that the evidence was insufficient to support his convictions because it did not establish that he did anything to further the transporting of illegal aliens. We disagree. There is sufficient evidence to support a verdict if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319.
 
 
 35
 Lopez-Medina stated that the man wearing the white baseball cap negotiated with the alien smuggler who was helping him enter the United States, told him and the other three aliens to get into the van, and opened and closed the van door for the aliens. As discussed above, testimony from Border Patrol agents supported an inference that Winn was that man. After the van was stopped, Winn first tried to walk away, and then produced phony identification and falsely claimed that he lived in a nearby apartment complex. In addition, there was evidence that Winn had been stopped during similar alien smuggling attempts twice before. This evidence, along with Winn's presence in the same vehicle as the transported aliens, is sufficient to support his convictions. Cf. United States v. Esparza, 876 F.2d 1390, 1393 (9th Cir. 1989) (evidence that the defendant was in the front seat of a car traveling in a convoy with a van carrying illegal aliens was not alone sufficient to support conviction under section 1324(a)(1)(B)).
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Winn also argues that he was not in the custody of the Bureau of Prisons (BOP), as required for a Section 751(a) conviction. There is no merit to this argument, as the halfway house contracted with the BOP, and could not release him without Parole Commission approval