**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

COURTNEY DAVID SACK,

Defendant-Appellant.

No. 03-2253

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-02-1893-LH)**

---

Stephen P. McCue, Federal Public Defender (Roger A. Finzel, Assistant Federal Public Defender, with him on the briefs), Albuquerque, New Mexico, for Defendant-Appellant.

Louis E. Valencia, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR, HOLLOWAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

After his arrest for involvement with a bank robbery, defendant Courtney David Sack was ordered by the district court to reside at a halfway house. Shortly thereafter, Sack failed to return to the halfway house after a day of work as required by the court's order. Sack was later indicted for his role in the robbery and for escape. Sack moved to dismiss the escape charge, but the district court denied the motion. Sack pleaded guilty to escape, but reserved his right to seek review of the district court's order. Sack appeals, arguing that he was not in custody for the purposes of the escape statute, 18 U.S.C. § 751, when he left the halfway house because he was not in the custody of the Attorney General. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that Sack was in custody within the meaning of § 751, we **affirm**.

## II. BACKGROUND

Sack was arrested after he provided an acquaintance with transportation from the scene of a bank robbery. After a bail review hearing, the district court did not detain Sack, but released him to the custody of the La Pasada Halfway House. The conditions of Sack's release were later modified and Sack was allowed to reside with his mother. While staying with his mother, Sack violated the conditions of the court's order by testing positive for cocaine use. The district court held a hearing and ordered Sack returned to the halfway house. Sack was permitted to leave the halfway house for employment purposes, but was required

to return to the halfway house after each work day. Shortly thereafter, pretrial services filed a petition alleging that Sack had failed to maintain residence at La Pasada because Sack did not return to the facility one day after work.

Sack was indicted for aiding and abetting a bank robbery, in violation of 18 U.S.C. § 3, and for escape, in violation of 18 U.S.C. § 751. Sack moved to dismiss the escape charge arguing that he was not in custody within the meaning of § 751 at the time he left the halfway house because he was not in the custody of the Attorney General. The district court rejected this argument and denied the motion. In exchange for a guilty plea on the escape charge, the government dropped the accessory after the fact charge. Under the plea agreement Sack retained his right to appeal the district court's order.

## III.  DISCUSSION

Because it involves a question of statutory construction, we review *de novo* the district court's conclusion that Sack was in custody as required by § 751. *See United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999).

### A.  Custody under § 751

Sack was charged with escape under § 751(a). That section provides as follows:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court,

judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of a felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; . . . or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 751(a). Despite the broad language of the statute, "[w]hoever escapes . . . from any custody under or by virtue of any process issued under the laws of United States by any court," Sack argues that for the statute to apply, one must be in the custody of the Attorney General at the time of the escape or attempted escape.

We have not previously addressed the specific question presented by Sack's argument. This court has, however, concluded that court ordered residence at a halfway house does constitute custody for the purposes of the sentencing guidelines. *See United States v. Swanson*, 253 F.3d 1220, 1223-24 (10th Cir. 2001). While we noted in *Swanson* that the meaning of custody for sentencing purposes may be different than what is required under § 751, our precedent has treated custody under § 751 broadly.[1] *Id.* In *United States v. Depew*, 977 F.2d

_____

[1] While *Swanson* did make the distinction mentioned above, it deserves mention that *Swanson* was not concerned with the identity of the custodian, but whether the nature of residence at a halfway house was sufficiently restrictive to constitute custody. *United States v Swanson*, 253 F.3d 1220, 1224 (10th Cir. 2001) ("Life at a halfway house undoubtedly entails fewer restrictions than life in prison, but one who lives there under court order is not free to come and go at will. In that respect, residence at a halfway house is a form of custody." (quotation omitted)). Our holding in *Depew*, that custody may be minimal or

-4-

1412, 1414 (10th Cir. 1992), we noted that "[c]ustody as used in the escape statute, does not require direct physical restraint. Custody may be minimal and, indeed, may be constructive." *Id*. (citations and quotation omitted). Most importantly for the present case, we recognized that "the statute applies only to those escapees who were originally confined or in custody under federal law in the sense that they were held in the custody of the Attorney General *or in custody by an order or process issued under the laws of the United States by a competent court or official*." *Id*. at 1413 (quotation and citation omitted) (emphasis added). In addition, we have upheld an escape conviction based on custody pursuant to process issued by a United States Commissioner. *Credille v. United States*, 354 F.2d 652, 653 (10th Cir. 1965). Because Sack was in the custody of the halfway house as a result of an order of the district court, we conclude he was in custody under § 751.

Sack argues *Reno v. Koray* suggests that § 751 requires that a defendant be in the custody of the Attorney General before he can be prosecuted for escape. 515 U.S. 50, 56-57 (1995). *Koray* examines whether time spent on pretrial release in a restrictive treatment center would entitle the defendant to a credit against his sentence. *Id*. In discussing the question, the Court noted the

---

constructive, suggests that the restrictions of life at a halfway house are sufficiently limiting so as to constitute custody for the purposes of § 751.

distinction between pretrial release and pretrial detention under the Bail Reform

Act. *Id.*

> The Bail Reform Act of 1984 provides a federal court with two
> choices when dealing with a criminal defendant who has been
> "charged with an offense" and is awaiting trial, 18 U.S.C. § 3142(a) .
> . . . The court may either (1) "release" the defendant on bail or (2)
> order him "detained" without bail . . . . [U]nder the language of the
> Bail Reform Act of 1984, a defendant suffers "detention" only when
> committed to the custody of the Attorney General; a defendant
> admitted to bail on restrictive conditions . . . is "released."

*Koray*, 515 U.S. at 57 (citations omitted). A defendant who is "released" cannot

"escape" argues Sack.

*Koray* was examining the language of 18 U.S.C. § 3585, not the statute at

issue here. We, of course, must begin with the language of the statute relevant to

this case. *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991).

"When, as in this case, the statute is unambiguous and free of irrational result,

that language controls." *Id*. (quotation omitted). Thus, because the plain

language of the statute allows for a charge of escape based on "any custody"

resulting from a court order there is no reason to conclude that a defendant must

be in the custody of the Attorney General.[2]

---

[2] Sack does argue that allowing custody based on a court order to support
an escape charge would "broaden[] the meaning of custody to objectionable
lengths," because it would allow for an escape prosecution based on any custody,
even that of a family member designated as third party custodian. The escape
statute is designed to discourage conduct which endangers the welfare of the
defendant's custodians and to discourage the crimes that often follow an escape.
*See United States v. Brown*, 333 U.S. 18, 21 n.5 (1948). A defendant leaving the

-6-

There are other reasons, moreover, that the conclusions of *Koray* do not affect the outcome in this case. The role of the Attorney General was especially important in *Koray* because, as the Supreme Court noted § 3585, strongly suggests that the type of pretrial detention allowing a defendant to claim a credit against his sentence must be equivalent to imprisonment administered by the BOP and the Attorney General. *Id.* at 59. Accordingly, it would be anomalous to allow a credit for pre-trial detention time spent at a facility not under the control of the Attorney General, where conditions might not mirror those of imprisonment. *Id.*

Furthermore, as the court in *Koray* notes, a court releasing a defendant has the power to set a number of highly restrictive conditions on that release. *See id.* at 57. This includes the power to restrict the defendant's liberty. *Id.* Nothing in *Koray* says that these conditions cannot constitute custody in the context of other statutes even if the defendant is not in official detention for the purposes of §

---

custody of the third party custodian against the will of the custodian can menace the welfare of that custodian as easily as a defendant escaping from jail can menace corrections officers. The character of escape as "absenting oneself from custody without permission" is not altered by pre-existing relationships between the custodian and the detainee. *United States v. Bailey*, 444 U.S. 394, 407 (1980). Moreover, the conditions of a defendant's pretrial release are determined by a competent court to be that set of conditions which "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A defendant ignoring those conditions undermines the important determinations made by a court ordering pretrial release. Thus, there is nothing absurd about discouraging such behavior. Whether the frequent use of an escape charge is appropriate under such circumstances is a matter of prosecutorial discretion which is not challenged in this appeal.

3585. *See id.* at 57-63*; Swanson*, 253 F.3d at 1223 ("the term 'custody' may vary in meaning when used in different contexts." (quotation and citation omitted)). Thus, the decision in *Koray* does not affect our conclusion here.[3]

Sack also relies on *United States v. Baxley*, 982 F.2d 1265, 1269-70 (9th Cir. 1992), which held that an escape charge was inappropriate in a factual setting similar to that extant in this case. *Baxley,* however*,* does not conclude that a defendant must be in the custody of the Attorney General before an escape charge is permissible, as Sack argues here. *Id.* Instead *Baxley* focused on whether the specific conditions of residence at a halfway house were sufficiently restrictive to constitute custody in the abstract sense. *Id.* Given our holding in *Depew* that custody may be minimal or even constructive, we are not persuaded by the reasoning in *Baxley*. *Depew*, 977 F.2d at 1414.

Sack also argues that a number of cases have included the requirement that the government prove the defendant was in the custody of the Attorney General as an element of § 751. *See, e.g., United States v. Harper,* 901 F.2d 471, 473-74

---

[3] The Court in *Koray* also cites a BOP program statement which stated that a defendant may not be prosecuted for escape when the defendant has been released under the Bail Reform Act. *Reno v. Koray*, 515 U.S. 50, 61 n.4 (1995). The most recent version of that program statement, however, simply recites the holding of *Koray* to justify the BOP's policy regarding time credit for pretrial detention. *See* U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28 (1997). The current program statement contains no mention of the whether a prosecution for escape would be allowable. Accordingly, whether the BOP still adheres to the previous interpretation is unclear.

(5th Cir. 1990); *United States v. McCray*, 468 F.2d 446, 448 (10th Cir. 1972). None of these cases have discussed whether such custody is always required by the statute. Instead, the facts of these cases were such that the custody of the Attorney General was the relevant type of custody and, therefore, it was unnecessary for these courts to consider the broader language in § 751. *Harper,* 901 F.2d at 473-74 (noting that the defendant was a federal prisoner serving a two-year sentence when he escaped); *McCray*, 468 F.2d at 448 (10th Cir. 1972) (describing the defendant as having escaped from a penitentiary farm at which he was confined at the direction of the Attorney General). Because these cases do not address the validity of a conviction for escape from custody based on a court order, they do not exclude such a conviction under § 751(a).

Finally, Sack argues that allowing a prosecution for escape based on a court order requires reading the phrase "or from any custody under or by virtue of any process issued under the laws of the United States by any court" in isolation from the rest of the statute. To the contrary, it is the contrast between this phrase and the rest of the statute created by the disjunctive "or" beginning the quote which makes the meaning of the phrase distinct from the preceding phrase. Thus, it is our contextual reading which is convincing, not a definition extracted by isolating the relevant phrase. Accordingly, we conclude that Sack was in custody for the purposes of § 751 when he left the halfway house.

**B.     Custody Based on Arrest for a Felony[4]**

Setting aside certain provisions not relevant here, under § 751 a defendant must be in custody as the result of an arrest for a felony or a misdemeanor to be charged with escape.  *See* 18 U.S.C. § 751(a).  Sack argues that because he was returned to the halfway house as a result of violating the conditions of his release, he was not in custody based on his arrest for a felony.  Sack argues that *United States v. Green*, 797 F.2d 855 (10th Cir. 1986) supports his conclusion.   In *Green*, the defendant was charged under § 751(a) for attempting to escape from the custody of a parole officer who had arrested him for a violation of parole.  *Id.* at 856.  We concluded that a violation of federal parole is neither a misdemeanor nor a felony, although the conduct constituting the violation might be either one. *Id*. at 858.  Similarly, Sack argues we should conclude that his violation of pretrial release conditions is not a felony or a misdemeanor.

*Green* is easily distinguished from the case at hand.  Until his arrest for a violation of parole, Green was not in custody of any kind.  The defendant's

---

[4] The government argues that Sack failed to raise this argument below and, therefore, we should decline to consider the issue.  Sack, however, characterizes his argument as concerning the sufficiency of the record and a defect in the indictment.  Sack's contention is that the indictment misstates the basis of his custody as an arrest for a felony when in fact his custody at the time of escape was the result of his violation of the conditions of his release.  That claim goes to the sufficiency of the indictment and, therefore, may be raised at any time. *United States v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000).  We review such a claim *de novo*.  *Id*. at 786

indictment under § 751 was for an "attempt to escape from the custody of . . . an officer of the United States who had placed said defendant under arrest for the offense of violation of federal parole . . . ." *Id*. at 856. Thus, the only basis for Green's custody was his arrest for violating parole.

The court's control of Sack's liberty, however, was premised on his arrest for a felony. As the indictment indicates, Sack escaped from "a facility in which he was lawfully confined . . . after being lawfully arrested for accessory after the fact to armed bank robbery, a felony offense under 18 U.S.C. § 3." This is an accurate statement of the basis for Sack's custody because throughout the relevant period Sack was subject to court orders that arose from his arrest for the felony. That the court twice altered the conditions of Sack's release based on his behavior does not sever the connection between the original arrest and the custody from which Sack escaped. Accordingly, Sack's arrest is clearly related to a felony. The outcome in *Green,* therefore*,* does not control and we conclude that Sack's indictment properly stated that he was in custody due to an arrest for a felony as required by the statute.

## IV.   CONCLUSION

Because we conclude that Sack was in custody at the time of his escape for the purposes of § 751, we **affirm**.