Opinion by Judge TASHIMA; Dissent by Judge CALLAHAN.
*1063 OPINION
TASHIMA, Circuit Judge:
The government appeals the district court’s dismissal of an indictment charging Anthony Edyle Burke with escape from custody in violation of 18 U.S.C. § 751(a). The district court concluded that Burke was not in “custody” within the meaning of § 751(a) when he left the residential reentry center where he was residing as a condition of his supervised release. We agree and affirm.
I.
In 2008, Burke pleaded guilty to a violation of 18 U.S.C. § 922(g)(4) and was sentenced to 37 months in prison, followed by 3 years of supervised release. Upon his release from the custody of the Bureau of Prisons (“BOP”), Burke violated the terms of his supervised release when he failed to report to his probation officer to commence a 180-day stay in a residential reentry center. After a revocation hearing, Burke was sentenced to be incarcerated for another 7 months and 21 days, followed by a 28-month term of supervised release. Burke’s conditions of supervised release ordered:
Defendant shall reside in a residential reentry center for a period up to 180 days. This placement may include a pre-release component, day reporting and home confinement (with or without electronic monitoring but not to include GPS) at the direction of the CCM and USPO. Defendant shall abide by the rules and requirements of the facility, Defendant shall remain at the facility until said 180 days has been completed.
Burke completed his prison term and commenced supervised release on March 19, 2010. In compliance with the conditions of his supervised release, he began residing at the Spokane Residential Reentry Center (“SRRC”).
On April 27, 2010, Burke checked out of SRRC and failed to return. As a result, SRRC reported him to his probation officer as an “absconder.” The next day, state authorities arrested Burke in Montana. Burke was returned to Washington to appear for his supervised release violations. On March 22, 2011, the grand jury returned an indictment charging Burke with escape from custody in violation of § 751(a).
Burke moved to dismiss the indictment, arguing that he was not in “custody” within the meaning of § 751(a). The government opposed the motion. The district court reviewed the conditions of Burke’s supervised release, including the rules and restrictions set forth in SRRC’s resident handbook, and granted the motion. It explained:
[SRRC] is part of supervised release in this ease. It is a court order after imprisonment is served and the person is no longer in custody, designed specifically in a case like Mr. Burke ... to provide him with a transition from custody to the community in a way that enables him to make a smooth transition, since he is essentially homeless; and that was the driving or motivating factor in the Court’s imposition of this term — that Mr. [Burke] had nothing and nowhere to go. And this simply gave him the opportunity to transition. It was by no means, by letter or in spirit, a custodial order of the Court; and therefore, the Court grants the motion. ,
The government timely filed this appeal.
II.
We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court’s interpretation of § 751(a). United States v. Wilbur, 674 F.3d 1160, 1170 (9th Cir.2012). We review the district court’s findings of fact with regard to *1064 the motion to dismiss the indictment for clear error. Id.
III.
18 U.S.C. § 751(a) provides:
Whoever escapes ... from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court ... shall, if the custody or confinement is by virtue of an arrest on a charge of felony ... be fined ... or imprisoned ... or both....
We have not previously addressed whether an individual who has completed his term of imprisonment and is residing at a halfway house or residential reentry center according to the court-ordered conditions of his supervised release is in “custody” within the meaning of § 751(a). We have, however, held that a defendant released on a personal recognizance bond and ordered by a court to reside at a halfway house pending trial is not[1] in “custody” for purposes of that statute. United States v. Baxley, 982 F.2d 1265 (9th Cir.1992).
The district court relied on our decision in Baxley to dismiss the indictment against Burke. The government argues that this reliance was misplaced because the circumstances of Burke’s release were different from those presented in Baxley and more closely resembled incarceration. In support of this argument, the government points to SRRC rules that established a curfew, limited visitors, assigned beds, restricted telephone use, and required residents to advise staff of their comings and goings in order to leave the premises. However, the district court examined the rules and requirements at SRRC and found that they mirrored standard supervised release conditions. It stated that its finding was consistent with the general understanding that restrictions at a halfway house are significantly less than those at a custodial facility. The court therefore concluded that the SRRC rules identified by the government were not sufficient to constitute “custody” for purposes of § 751(a).
We agree that Burke was not in “custody” when he left the SRRC. He was not serving a prison sentence, nor was he confined to SRRC under conditions equivalent to custodial incarceration. Although the government argues that rules governing Burke’s daily activities at SRRC distinguish this case from Baxley, our opinion in that case contains no indication that similar restrictions on telephone use or meal times, for example, were not in place at Baxley’s halfway house. Like Baxley, residents at SRRC were free to be employed outside the center, and to come and go during the day with permission if they logged in and out. See Baxley, 982 F.2d at 1269. The government stresses that SRRC put residents on “escape or abscond status” if they failed to return timely to the center, but similar restrictions on movement were imposed on Baxley. The halfway house where Baxley resided listed him as an “escapee” when he was not present within two hours of his estimated time of return. Id. at 1267.
Burke was not in “custody” when he left the SRRC because the conditions of his release “were much more analogous to probation than they were to imprisonment.” Id. at 1269. As we held in Baxley.
[Ijndividuals on probation are conditionally released from incarceration, must maintain a particular residence or notify the court of changes, are subject to travel restrictions, and must report regularly to government officials. If an individual violates probation, he is not tried for escape; rather, his probation is revoked, and he can be indicted for escape only if *1065 he thereafter fails to report for custodial incarceration.
Id. at 1269-70. Like an individual on probation, Burke was conditionally released from incarceration; his failure to return to SRRC was a violation of his release conditions punishable by revocation of release, not an escape from “custody” within the meaning of § 751(a).[1]
The government argues that the district court should have looked to our opinions in United States v. Keller, 912 F.2d 1058 (9th Cir.1990), and United States v. Jones, 569 F.2d 499 (9th Cir.1978), to hold that Burke escaped from custody in violation of § 751(a). But there is a crucial distinction between Burke and the defendants in Keller and Jones: the latter were committed to BOP custody when they absconded. See Keller, 912 F.2d at 1059-60 (noting that Keller was “committed to the Attorney General for imprisonment” and “ordered into custody”); Jones, 569 F.2d at 500 (addressing situation of a prisoner committed to a “pre-release or half-way house program by designation of the Attorney General”). In contrast, Burke had completed his prison term and was no longer in BOP custody when he left SRRC.
Moreover, as we recognized in Baxley, Jones never addressed what “custody” means under § 751(a). See Baxley, 982 F.2d at 1269 n. 8 (“[D]icta in United States v. Jones ... gave an interpretation of the term as it was used in an entirely different statute (18 U.S.C. § 4082(d)) ... and ... addressed only an issue involving jury instructions and not the question presented here.”). The plain language of the Jones opinion indicates that the Court did not reach the question presented in this case. See 569 F.2d at 500 (“This appeal presents a single issue: Does a charge of escape under 18 U.S.C. § 751 require proof of intent to avoid confinement?”).
Finally, the government urges this Court to follow the Tenth Circuit’s decision in United States v. Sack, 379 F.3d 1177 (10th Cir.2004), although it . acknowledges that Sack expressly rejected Baxley and adopted a definition of “custody” far broader than the one recognized by our Circuit.[2] Id. at 1181; see also id. at 1180 n. 2 (indicating individual could be prosecuted under § 751(a) for violating condition of release requiring her to reside with family member). Even if we could do so, we decline to disregard our own precedent in favor of Sack’s expansive reading of the term. Our approach is supported by the rule of lenity, which requires us to resolve ambiguity in favor of the defendant and give effect to the more lenient construction of the term “custody.” See Liparota v. United States, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (“[Ajmbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.” (citation omitted)); Baxley, 982 F.2d at 1270.[3]
IV.
For the foregoing reasons, the order of the district court dismissing the indictment is
AFFIRMED.

. Indeed, Burke was later sentenced to 12 months in prison and 9 months of supervised release for violating the terms of his supervised release.

. The dissent's assertion that Sack is reconcilable with Baxley, "if we hold in this case that Burke was in 'custody,' ” Dissent at 1068, is perplexing in light of Sack's express rejection of Baxley. See Sack, 379 F.3d at 1181 ("[W]e are not persuaded by the reasoning in Baxley.”).

.The case relied on by the dissent, see Dissent at 1066 n.2, Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), is not to the contrary. Here, as in Reno, "we can make no more than a guess as to what Congress intended.” Id. at 65, 115 S.Ct. 2021.