**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 8, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEAN GROSS,

    Defendant - Appellant.

No. 22-2143
(D.C. No. 1:21-CR-00297-JB-1)
(D.N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **ROSSMAN**, **KELLY**, and **MURPHY**, Circuit Judges.[**]
_____

Defendant-Appellant Dean Gross pled guilty to escaping from federal custody, 18 U.S.C. § 751(a), and was sentenced to 27 months' imprisonment and three years' supervised release. 1 R. 24–33, 126–27. In the plea agreement, Mr. Gross agreed to waive appellate review of his conviction and sentence, with a narrow exception allowing him to argue on appeal that this court incorrectly decided United States v. Sack, 379 F.3d 1177 (10th Cir. 2004). 1 R. 29–30. We have jurisdiction under 28 U.S.C. § 1291 and 18

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

U.S.C. § 3742(a). We affirm on the preserved issue and dismiss the balance of the appeal.

## Background

After being placed in pretrial custody at La Pasada Halfway House, Mr. Gross left without obtaining permission from pretrial services officers or employees. 1 R. 26–27. A warrant was issued for his arrest, and Mr. Gross was later apprehended by law enforcement and transferred to federal custody. 2 R. 6. In exchange for his guilty plea on the escape charge, the government agreed to drop a false statement count, 18 U.S.C. § 1001(a)(2). 1 R. 30. As relevant here, the plea agreement contained the following waiver:

> [T]he Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, within the statutory maximum authorized by law, as well as any order of restitution entered by the Court. The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number.

Id. at 29–30. Notwithstanding the waiver, the agreement allowed Mr. Gross to appeal "[t]he denial or rejection of any motion or any argument, oral or written, claiming that the United States Court of Appeals for the Tenth Circuit's decision in [Sack], was incorrectly decided." Id. at 30. In his opening brief to this court, Mr. Gross made several arguments that the government contends are barred by his waiver. The government moved to enforce the waiver, but this court denied the motion without prejudice as untimely under 10th Cir. R. 27.3(A)(3)(b). This court subsequently denied reconsideration, explaining

2

that our practice is either to grant a motion to enforce an appeal waiver and dismiss an appeal in its entirety, or deny the motion and send the entire appeal to a merits panel.

## Discussion

On appeal, Mr. Gross makes several arguments in addition to arguing that Sack was wrongly decided. First, he argues he was afforded inadequate notice regarding what conduct would subject him to a criminal conviction because the language of his release conditions was ambiguous. Aplt. Br. at 15–21. Second, he argues his plea was invalid because it was not knowing, voluntary, and intelligent. Id. at 21–30. Finally, he argues the superseding indictment was factually inadequate and failed to protect him from a double jeopardy violation. Id. at 30–34. The government seeks enforcement of the waiver.

### A.    Appeal Waiver Enforcement

We review de novo whether a defendant's appeal waiver is enforceable. United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 (10th Cir. 2008). "A particular waiver's enforceability hinges on: '(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived [his] appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.'" Id. (quoting United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004)). We address each factor in turn.

**1. Scope of Appellate Waiver**

First, Mr. Gross's arguments that he was afforded inadequate notice by his ambiguous release conditions[1] and that the superseding indictment was factually inadequate certainly fall within the scope of the waiver. Both arguments challenge his conviction, which the waiver expressly prohibits. We do not consider them independently. To the extent that Mr. Gross argues his plea was not knowing, voluntary, and intelligent, we consider that in the next step of our analysis as part of our inquiry under Ibarra-Coronel and Hahn.

**2. Knowing and Voluntary**

Normally, when a defendant challenges only the appeal waiver provision of a plea agreement, we are not obligated to consider the validity of the plea itself. United States v. Rollings, 751 F.3d 1183, 1190 n.5 (10th Cir. 2014). But when the defendant asserts that the plea itself was not knowing and voluntary — as Mr. Gross does here — we may examine the entire plea, including the appeal waiver and the plea provisions. Id. at 1189–1190. The parties agree that Mr. Gross failed to raise this argument below, so we review for plain error. Aplt. Br. at 21; Aplee. Br. at 14.

We find no error, plain or otherwise, with Mr. Gross's plea. While Mr. Gross understands that he left the halfway house without permission, he continues to argue that

---

[1] On its own, this argument expressly challenges Mr. Gross's conviction, which is prohibited by the waiver. However, Mr. Gross maintains that the inadequate release conditions are the reason why his plea was not knowing, voluntary, and intelligent. Aplt. Br. at 24–30. Thus, while we do not consider the argument independently, we do address it in analyzing whether the plea was knowing and voluntary.

"the conflicting detention provisions of his pretrial release conditions would have prevented him from understanding what they required." Aplt. Br. at 26. For instance, Mr. Gross argues that his detention provisions required that he reside at the halfway house while restricting him to "home detention[.]" Id. at 12. According to Mr. Gross, he "could not both have resided at the halfway house and at his home." Id.

The record does not support this contention. When Mr. Gross was initially placed in pretrial custody at La Pasada, the court stated, "I'm not willing to allow or to authorize Mr. Gross' release back home." 1 Aplee. Supp. App. 55. As an alternative, the court agreed to "authorize Mr. Gross' release to La Pasada Halfway House" and instructed Mr. Gross that he would be subject to "GPS monitoring on home detention at La Pasada." Id. at 55–56. The court informed Mr. Gross that he could leave for specified appointments but reiterated that "otherwise, you have to be at La Pasada." Id. at 55.

Mr. Gross also claims his release conditions, plea hearing, sentencing hearing, and plea agreement failed to inform him of his obligation to obtain permission to leave the halfway house and that the court never asked whether he understood this requirement. Aplt. Br. at 25. But the plea agreement and plea colloquy are to the contrary. Mr. Gross confirmed that he was not impaired or coerced, 2 Aplee. Supp. App. 7–8, 24–26; that he understood the proceeding, id. at 26; that he understood the charges, including the elements of the offense and the possible penalties, id. at 11–13; and that he read and understood "each and every term of" the plea agreement and reviewed the agreement with counsel. Id. at 13–14, 19. When asked by the magistrate judge to describe why he was guilty of the offense, Mr. Gross responded, "I left the halfway house without

5

permission." Id. at 22. Mr. Gross acknowledged that he knew he lacked permission to leave. Id. at 23. Finally, the court carefully reviewed Mr. Gross's appeal waiver and confirmed his understanding. Id. at 19–21. Nothing in the record suggests that Mr. Gross's plea was not knowing, voluntary, and intelligent.

### 3. Miscarriage of Justice

An appellate waiver results in a miscarriage of justice in four situations: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Hahn, 359 F.3d at 1327 (alterations in original) (citation omitted). Mr. Gross has not argued, nor does the record suggest, that the district court relied on impermissible factors or that he received ineffective assistance of counsel; he expressed satisfaction with counsel. 2 Aplee. Supp. App. 19. Mr. Gross was sentenced far below the statutory maximum of five years. See 18 U.S.C. § 751(a). Thus, only factor four is disputed. As discussed above, the plea and accompanying waiver were knowing and voluntary — no miscarriage of justice occurred. We enforce the appeal waiver, and we will dismiss the appeal except for the issue regarding Sack.

### B. United States v. Sack

Mr. Gross argues that this court wrongly decided that an individual who resides at a halfway house pursuant to pretrial release conditions is "in custody" for purposes of 18 U.S.C. § 751(a). Aplt. Br. at 14 (citing Sack, 379 F.3d 1177). Of course, Mr. Gross recognizes that "[o]ne panel of this court cannot overrule the judgment of another panel

6

absent en banc consideration." <u>Arostegui-Maldonado v. Garland</u>, 75 F.4th 1132, 1142 (10th Cir. 2023) (alteration in original) (citation omitted); Aplt. Br. at 15.  He raises the issue to seek certiorari from the Supreme Court.  Thus, regarding that challenge, the judgment is AFFIRMED, and the balance of the appeal is DISMISSED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge