**UNITED STATES of America, Plaintiff,**

v.

**Joseph FICO, Defendant.**

**No. 95–CR–6069L.**

United States District Court,
W.D. New York.

July 16, 1998.

on May 10, 1998, staff at the Center gave defendant a leave pass until 9:00 p.m. that night and that defendant failed to return.

After the warrant was issued, defendant surrendered to the Probation Office. On June 29, 1998, he pleaded guilty to a violation of the terms of his supervised release. He admitted that he violated the special condition that he reside at the Center. Sentencing was scheduled for July 2, 1998.

Prior to sentencing, an issue arose concerning whether defendant's violation constituted a Grade B or Grade C violation under § 7B1.1 of the United States Sentencing Guidelines. A Grade B violation is defined as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2). A Grade C violation is defined as "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3). Given defendant's criminal history category, the applicable range of imprisonment for a Grade B or C violation would be respectively either eight to fourteen months or five to eleven months. U.S.S.G. § 7B1.4(a). The Guidelines also direct that "[u]pon a finding of either a Grade A or B violation, the court shall revoke ... supervised release." Section 7B1.3(a)(1). A Grade C violation is not deemed as serious and allows the court to extend supervised release or modify the terms of supervision.

The Government took the position that defendant had committed a Grade B violation because his failure to return to the Center constituted an escape in violation of 18 U.S.C. § 751(a), which is punishable by a term of imprisonment up to five years. Defendant maintained that his conduct did not violate § 751, because that statute applies only to an escape from "custody." Defendant contended that once he began his supervised release, he was no longer in custody, and that therefore his conduct constituted only a violation of the terms of supervised release, and nothing more.

On July 2, 1998, in open court, I found that defendant had committed a Grade C viola-

Charles B. Wydysh, U.S. Atty's Office, Buffalo, NY, for U.S.

William Clauss, Federal Public Defender, Rochester, NY, for Joseph Fico, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

**BACKGROUND**

On March 28, 1996, defendant, Joseph Fico, pleaded guilty to an indictment charging him with conspiracy in violation of 18 U.S.C. § 371. On June 21, 1996, I sentenced Fico to a term of imprisonment of sixteen months, followed by a three-year period of supervised release.

While defendant was on supervised release, on December 17, 1997, I granted a request by the Probation Office to modify the conditions of Fico's release because he had repeatedly tested positive for cocaine since beginning supervised release. One of the new conditions was that defendant was to reside for five months at the Community Corrections Center ("the Center").

On May 12, 1998, I directed the issuance of a warrant for Fico's arrest, based on his probation officer's allegation that Fico had violated the terms of his supervised release. Specifically, the probation officer stated that

tion. I revoked his supervised release, and ordered him incarcerated for a period of six months. This Decision and Order memorializes that ruling and sets forth the reasons underlying my conclusion that defendant committed a Grade C violation, and not a Grade B violation for an escape.

## DISCUSSION

■ Although both sides submitted briefs prior to sentencing, none of the cases cited therein, nor any case that the court has found, directly addresses the issue in this case: whether residing at a Community Corrections Center or "halfway house" pursuant to court-imposed terms of supervised release amounts to being in custody for purposes of 18 U.S.C. § 751. Based on the wording of the relevant statutes, however, as well as the reasoning of some cases dealing with similar issues, I conclude that it does not.

As stated, by its terms § 751 only applies to escape from "custody." In addition, 18 U.S.C. § 4082(a) provides that "[t]he willful failure of a prisoner ... to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in" § 751. Although neither statute explicitly makes a distinction between custody and supervised release, in the context of the case at bar I believe that logic dictates such a distinction.

At the outset, I note that the cases and statutes relied upon by the Government are inapposite. Contrary to the Government's position, § 4082 has no application here because the Center was not "an institution or facility designated by the Attorney General ..." with respect to Fico. *See United States v. Miranda,* 749 F.Supp. 1062, 1064 (D.Colo. 1990) (§ 4082 not applicable where defendant's stay at center was neither part of pre-release program nor at the direction of the Attorney General, but a condition of his release on bond pending sentencing).

Likewise, in *United States v. Jones,* 569 F.2d 499 (9th Cir.), *cert. denied,* 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 407 (1978), the defendant originally had been committed to prison, but by designation of the Attorney General was released to a contract halfway house, which he left one night and never returned. The other cases cited by the Government are similar and hence factually inapposite to the instant case. *See United States v. Taylor,* 485 F.2d 1077 (D.C.Cir.1973) (defendant serving part of prison sentence in halfway house); *United States v. Vaughn,* 446 F.2d 1317 (D.C.Cir.1971) (defendant participating in work release program while in jail awaiting trial); *McCullough v. United States,* 369 F.2d 548 (8th Cir.1966) (defendants in pre-release center operated by Bureau of Prisons).

Although not on all fours with the instant case, the case most analogous to this one appears to be *Miranda,* 749 F.Supp. 1062. In *Miranda,* the defendant had been found guilty of a drug offense, and the trial court continued his bond pending sentencing. As a condition of defendant's release, he was ordered to reside at a Community Treatment Center ("CTC"). After he failed to return to the CTC, the defendant was arrested and charged with escape under § 751(a).

The defendant pleaded guilty to the escape charge, but subsequently moved to vacate his conviction and sentence under 28 U.S.C. § 2255. The district court granted the motion, holding that the defendant was not in custody at the time of his failure to return to the CTC, and that therefore he could not have been guilty of violating § 751.

In reaching this conclusion, the court in *Miranda* observed that the

[d]efendant was not in the custody of the Attorney General, and was not confined in the Boulder CTC by the direction of the Attorney General. He was not in the custody of a federal officer. The government argues that he was in custody in the Boulder CTC "by virtue of any process issued ... by any judge." However, a bond condition that defendant live in a particular place is not tantamount to "custody." If the defendant had been required to live with his parents as a condition of bond, he would not have been charged with escape from custody if he decided to leave his parent's residence.

*Id.* at 1064.

In a similar vein, the Court of Appeals for the Ninth Circuit held in *United States v.*

*Baxley,* 982 F.2d 1265 (9th Cir.1992), that where a defendant who had been released on a pretrial personal recognizance bond, a condition of which was that he reside at a halfway house, left the house and did not return, the defendant did not escape from "custody," and that therefore his conviction under § 751(a) could not stand. *Id.* at 1270. Observing that "[t]he restrictions on Baxley's activities were slight ...," the court stated that "[i]n no way did Baxley's 'conditions of confinement approach[ ] those of incarceration' sufficient to constitute 'custody' under § 751(a)." *Id.* at 1269 (quoting *Grady v. Crabtree,* 958 F.2d 874, 875 (9th Cir.1992) (per curiam)). The court added that "[t]he conditions of Baxley's release were much more analogous to probation than they were to imprisonment or 'custody,'" and pointed out that "[i]f an individual violates probation, he is not tried for escape; rather his probation is revoked, and he can be indicted for escape only if he *thereafter* fails to report for custodial incarceration." *Id.* at 1269–70.

The same logic applies to the case at bar. Fico's residence at the Center was simply a condition of his supervised release, and a relatively modest one at that; certainly it left him with far more personal freedom than he would have had he been confined to jail. For example, he was authorized to leave the facility for employment. As the court in *Miranda* pointed out, I could instead have ordered Fico to reside at the home of his mother or another relative, and it strains credulity to think that he could have been charged with escape under § 751 if he violated that condition.

Moreover, even if there is some ambiguity in the language of § 751 with respect to what constitutes "custody," "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Koehler,* 973 F.2d 132, 135 (2d Cir.1992) (quoting *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)); *accord Baxley,* 982 F.2d at 1270 (court would be required to give effect to more lenient, yet plausible, interpretation of term "custody" even were court to prefer more stringent interpretation).

## CONCLUSION

I find that defendant's conduct in leaving the Community Corrections Center did not constitute an "escape" and, therefore, defendant was not guilty of a Grade B violation but a Grade C violation, and the defendant has been sentenced accordingly.

IT IS SO ORDERED.