United States v. Edelman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

August Term, 2012

(Argued: April 19, 2013                    Decided: August 9, 2013)

Docket No. 12-2166-cr

———————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

JODY EDELMAN,

*Defendant-Appellant*.[1]

———————————————

Before: JACOBS, *Chief Judge*, POOLER and WESLEY *Circuit Judges*.

Appeal from the judgment of conviction of the Northern District of New York (Frederick

J. Scullin, Jr., *J*.), following a jury trial, convicting defendant of three counts of possession with

intent to distribute and distribution in violation of 21 U.S.C. § 841(a)(1), (b)(1), and one count of

escape in violation of 18 U.S.C. § 751(a).  We hold that defendant's placement in a residential

reentry facility as a condition of the modification of his supervised release constitutes

"custody . . . by virtue of . . . [a] conviction of any offense" under 18 U.S.C. § 751(a), and further

hold that the district court did not err in denying defendant's motion to suppress evidence.

Accordingly, the judgment of the district court is AFFIRMED.

---

[1] The Clerk of the Court is directed to change the caption as set out above.

KENNETH M. MOYNIHAN, Syracuse, NY, *for Defendant-Appellant*.

JOHN G. DUNCAN, Assistant United States Attorney (Richard S. Hartunian, United States Attorney for the Northern District of New York, *on the brief*), Syracuse, NY, *for Appellee*.

Pooler, *Circuit Judge*:

Defendant-Appellant Jody Edelman appeals from a May 24, 2012 judgment of conviction of the district court (Frederick J. Scullin, Jr., *J*.), following a jury trial, which convicted him of three counts of possession with intent to distribute and distribution in violation of 21 U.S.C. § 841(a)(1), (b)(1), and one count of escape in violation of 18 U.S.C. § 751(a) ("Section 751(a)"). On appeal, Edelman argues that he was not an escapee under Section 751(a) because his placement in a residential reentry facility or halfway house as a condition of the modification of his supervised release did not constitute "custody . . . by virtue of . . . [a] conviction of any offense" under the statute. He further argues that the district court should have suppressed certain evidence relating to his drug convictions because the government acquired the evidence in violation of his rights under the Fourth Amendment. We conclude that both arguments are without merit and accordingly AFFIRM the judgment of the district court.

## BACKGROUND

In 1993 Edelman was convicted in federal court of conspiracy to possess with intent to distribute cocaine, receiving a sentence of seven years' imprisonment followed by three years of supervised release. On July 9, 2002 he pled guilty in state court to possession of a controlled substance, receiving a sentence of six years to life imprisonment. On September 25, 2007, after his release from state custody, Edelman began serving his federal supervised release, at which

2

time he was also subject to lifetime parole supervision with New York State due to his state law possession conviction. In early 2008, on two separate occasions, Edelman was arrested and charged with misdemeanors, which led to New York State filing a parole violation and remanding Edelman to state custody.

As a result of Edelman's parole violation, the New York State Parole Board and United States Parole Board jointly recommended that the district court impose more restrictive conditions on his supervised release. On March 25, 2008 Edelman signed a waiver agreeing to a modification of the terms of his supervised release, which provided that Edelman would reside in a residential reentry facility for a period of five months. It also stated:

> You shall submit your person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any federal probation officer, or to any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

On April 21, 2008 the district court imposed the modifications agreed to in the waiver. On May 30, 2008, in a state proceeding, Edelman agreed to have his parole revoked and then restored on the condition that he abide by the conditions, including modifications, of his supervised release. On June 6, 2008 Edelman began his placement at the Syracuse Pavilion Residential Reentry Center ("Pavilion") in Syracuse, New York, a facility designated by the Department of Justice as a residential reentry facility or halfway house.

At Pavilion, Edelman received an "Orientation Checklist" that set forth the facility's rules. The Checklist stated, *inter alia*, that residents could not leave without notifying staff; could only leave the building for up to 12 hours at a time; and could not combine work, leisure,

3

or other activities, but instead had to return to the facility and sign out separately before each activity. It also provided that "[r]esidents are subject to search of their persons and property by staff at any time."

On August 29, 2008 Edelman walked past Pavilion's entrance monitor, left, and never returned. On September 16, 2008 the district court issued an arrest warrant, and on October 2, 2008, following a tip from a confidential source, the United States Marshals arrested Edelman in the lobby of the Skyline Apartments in Syracuse. Officers found a set of apartment keys on Edelman during his arrest. After investigation, the Marshals determined that the keys opened Apartment 509, an apartment legally leased by Adrienne Iauco, who had verbally agreed to sublet the apartment to Edelman. With Iauco's consent, but without a search warrant, officers entered Apartment 509, where they found evidence of drug trafficking in plain view. Later that day, officers executed a search warrant and then returned to the apartment, where they found drugs, packaging material, and paraphernalia. On October 10, 2008 the Drug Enforcement Administration, after receiving information from a relative of Edelman's, returned to Apartment 509 and found $12,000 in currency along with two credit cards in Edelman's name.

Edelman and a co-defendant, Raymond Gonzalez, were charged in an indictment with Count 1, knowingly and intentionally possessing with intent to distribute 100 grams or more of a mixture containing heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); Count 2, knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture containing cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and Count 3, knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture containing cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Edelman was also charged with

4

Count 4, escape in violation of 18 U.S.C. § 751(a), based on his departure from Pavilion.  After the indictment, Edelman moved to dismiss the escape charge as legally insufficient, arguing that his residence in Pavilion as a condition of his supervised release did not constitute "custody" under Section 751(a).  He also moved to suppress the evidence obtained during the search of Apartment 509.  The district court denied both motions in a memorandum decision and order and also denied Edelman's motion for reconsideration.  Edelman proceeded to trial, where a jury convicted him of all four counts, after which, on May 24, 2012 the district court sentenced him to 200 months' imprisonment.  Edelman now appeals.

## DISCUSSION

Renewing his arguments before the district court, Edelman makes two claims on appeal.  First, he argues that the district court erred in holding that his residence in Pavilion as a condition of the modification of his supervised release constituted "custody . . . by virtue . . . of [a] conviction of any offense" under Section 751(a), and that therefore he was not an escapee under the statute.  "Because this claim presents a question of statutory interpretation, we review the [d]istrict [c]ourt's decision *de novo*."  *United States v. Cassesse*, 685 F.3d 186, 188 (2d Cir. 2012).  Second, Edelman argues that the district court erred in denying his motion to suppress evidence seized during the search of Apartment 509, where he resided after leaving the halfway house.  "On an appeal from a district court's ruling on a motion to suppress evidence, we review the court's factual findings for clear error, viewing the evidence in the light most favorable to the government.  The district court's legal conclusions are reviewed *de novo*."  *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009).  We hold that both of Edelman's arguments are without merit.

5

**I. "Custody" Under 18 U.S.C. § 751(a)**

Section 751(a) provides, in relevant part, that:

Whoever escapes or attempts to escape . . . from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge . . . shall, if the custody or confinement is by virtue of . . . [a] conviction of any offense, be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 751(a). Edelman argues his August 28, 2008 departure from Pavilion, where he resided as a condition of the modification of his supervised release, did not constitute escape under Section 751(a). His argument has two parts. First, he argues that residence at Pavilion, a residential reentry facility or halfway house, does not constitute "custody" under the statute. Second, he argues that, assuming *arguendo* that residence at a halfway house does constitute custody, his placement there was not "by virtue of . . . [a] conviction of any offense." We conclude that both claims are without merit.

With respect to Edelman's first point, it is an open question in our circuit whether residence in a halfway house constitutes "custody" under Section 751(a). Our sister circuits are divided over the issue. In *United States v. Rudinsky*, the Sixth Circuit held that the defendant's placement in a community treatment center, which allowed him to leave during the day for work and meals, constituted custody. 439 F.2d 1074, 1076 (6th Cir. 1971). Similarly, in *United States v. Sack*, the Tenth Circuit held that the defendant's pretrial release into a halfway house constituted custody. 379 F.3d 1177, 1179 (10th Cir. 2004). We have approvingly cited, albeit in a summary order, *Sack*'s proposition that "for purposes of escape statute, custody may be minimal and, indeed, may be constructive." *United States v. Kelly*, 368 F. App'x 194, 197 (2d Cir. 2010) (summary order) (internal quotation marks omitted). However, the Ninth Circuit has interpreted "custody" more narrowly, holding that, under the statute, pretrial residence at a

6

halfway house does not constitute custody, *United States v. Baxley*, 982 F.2d 1265, 1269-70 (9th Cir. 1992), and placement in a halfway house due to the violation of the terms of post-incarceration supervised release does not constitute custody, *United States v. Burke*, 694 F.3d 1062, 1063-65 (9th Cir. 2012). Within our circuit, two cases in the Western District of New York have reached opposite conclusions. In *United States v. Fico*, the district court, relying on *Baxley*, held that residence in a halfway house as a condition of post-incarceration supervised release was not custody under the statute. 16 F. Supp. 2d 252, 255 (W.D.N.Y. 1998). In *United States v. Kates,* the district court declined to follow *Fico* and, relying on *Sack*, held that residence in a halfway house as a condition of post-incarceration supervised release did constitute custody. No. 10-MJ-1057-JJM, 2011 WL 1256848, at *1-*2 (W.D.N.Y. April 1, 2011).

Upon consideration, we find the Sixth and Tenth Circuits persuasive, and hold that residence in a halfway house as a condition of post-incarceration supervised release is "custody" for purposes of Section 751(a). It is significant that the statute applies to "any custody," suggesting that the term "custody" should have a broad interpretation. *See Sack*, 379 F.3d at 1180. While Edelman's residence at Pavilion was different from incarceration, it subjected him to a restraint on his activities and limited the amount of time he could spend out of the facility. As Edelman himself concedes, "custody as used in the escape statute, does not require direct physical restraint. Custody may be minimal and, indeed, may be constructive." *Sack*, 379 F.3d at 1179 (internal quotation marks omitted); *see also Rudinsky*, 439 F.2d at 1076 ("A person may still be in custody, even though not under constant supervision of guards, so long as there is some restraint upon his complete freedom."). Edelman argues that the rule of lenity should

prohibit his conviction under Section 751(a). However, we hold that the statute "makes clear that his conduct is proscribed." *United States v. Shellef*, 507 F.3d 82, 106 (2d Cir. 2007). "[T]he rule of lenity is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the statute, such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute." *Id.* (internal quotation marks and alterations omitted).

Edelman also argues that his conduct falls outside the statute because his placement in Pavilion was due to a modification of the condition of his supervised release, and not "by virtue of . . . [a] conviction of any offense." *See* 18 U.S.C. § 751(a). We also reject this argument. In a different context, we have noted that "postrevocation penalties are attributable to the original conviction and are not new punishments." *United States v. Vargas*, 564 F.3d 618, 624 (2d Cir. 2009). Interpreting Section 751(a)'s "by virtue of" language, the Fourth Circuit has held that "the term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence." *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998). We agree, and hold that Edelman's placement in Pavilion was part of the original sentence for his 1993 conviction for conspiracy to distribute cocaine.

## II. Denial of Edelman's Motion to Suppress Evidence

Edelman also argues that the district court erred in denying his motion to suppress evidence seized from the search of Apartment 509, where he resided after leaving the halfway house, which led to his conviction on three drug charges. "A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a

8

legitimate expectation of privacy in the place searched." *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (internal quotation marks omitted). "This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable." *Id.*

Edelman's argument fails because the district court properly held that he did not have an objectively reasonable expectation of privacy. As a condition of both (i) the modification of his supervised release and (ii) his residence at the halfway house, Edelman agreed to subject himself to search of his person and property "at any time." "[P]ersons on supervised release who sign [waivers] manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (internal quotation marks omitted). Moreover, as discussed above, Edelman's residence in Apartment 509 began after he escaped from a halfway house in violation of Section 751(a). A person whose "legitimate privacy expectations [are] severely curtailed" cannot "expand his legitimate expectations of privacy by escaping." *See United States v. Roy*, 734 F.2d 108, 111-12 (2d Cir. 1984). Accordingly, we affirm the district court's denial of the motion to suppress evidence.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.