15-1744
*United States v. Jackson*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007 is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of September, two thousand sixteen.

Present:    ROBERT A. KATZMANN,
                       *Chief Judge*,
              RICHARD C. WESLEY,
              PETER W. HALL,
                       *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                       *Appellee*,
              v.                                                    No. 15-1744

VINCENT JACKSON,

                       *Defendant-Appellant.*

_____

For Appellee:                          WAYNE A. MYERS, Assistant United States Attorney, *for*
                                            Richard S. Hartunian, United States Attorney for the Northern
                                            District of New York, Albany, NY.

For Defendant-Appellant:        GWEN M. SCHOENFELD, Law Office of Gwen M. Schoenfeld,
                                            LLC, New York, NY.

1

Appeal from the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the order of the district court is **AFFIRMED**.

Defendant Vincent Jackson appeals from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*), entered May 21, 2015, convicting him of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Specifically, he argues that the firearm and ammunition evidence on which his conviction was based should have been suppressed because that evidence was recovered during an unconstitutional search. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Jackson was previously convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) and was sentenced principally to sixty months in prison. Shortly after he was released, he violated the terms of his supervision and was sentenced to an additional six months in prison. On November 15, 2012, Jackson began serving his second term of supervised release in the Northern District of New York. He consented to a special condition of release that provided:

> You shall submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, *with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you.* Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

App. 37 (emphasis added). On March 18, 2013, he was charged in New York state court with misdemeanor assault, and the district court imposed conditions of home detention and electronic

monitoring while those charges remained pending. Subsequently, Jackson's electronic monitoring reports revealed that he traveled to New York City without permission on at least five occasions between June 17 and July 16, 2013.

On August 28, 2013, Jackson was riding as a passenger in a vehicle that was pulled over by state police in Plattsburgh, New York. One of the other occupants of the vehicle, Julie Rabideau, had previously been convicted of a federal narcotics trafficking crime. Jackson had approximately $2500 in cash on his person, mainly in denominations of $10 and $20. He told the officer that the money came from his job as a construction worker. However, the Probation Office had no record of Jackson working in that business. The stop did not result in any arrests. Jackson did not notify the Probation Office that he was questioned by a law enforcement officer. Several days later, state police stopped the same vehicle again in Plattsburgh. Rabideau was in the vehicle with another woman, and Jackson was not present. During a search, the police found a small safe containing cocaine packaged for sale, as well as composition notebooks with titles such as "Accounts" and "Payroll" containing handwritten ledgers. The two women were arrested.

On September 10, 2013, Probation sought and obtained an arrest warrant for Jackson based on three violations of supervised release: (1) traveling to New York City without authorization; (2) associating with a convicted felon; and (3) failing to report a law enforcement contact. Jackson was arrested the next day when he reported to the Probation Office. Later that day, Probation conducted a warrantless search of Jackson's residence pursuant to the search condition of his supervised release. During the search, the officers recovered a loaded handgun and ammunition from a nightstand from Jackson's bedroom. They subsequently searched two cellphones that Jackson frequently used and found photographs of the handgun as well as

outgoing messages containing the photograph and text stating, "Now I need bullets." App. 68-69. Jackson was then charged with one count of being a felon in possession of a firearm.

Before trial, Jackson moved to suppress the evidence obtained from his apartment. The district court denied his motion, holding that "the uncontested evidence clearly establishes that the Probation Officer had reasonable suspicion to believe that Defendant was engaged in criminal activity and that he was repeatedly violating the terms and conditions of his supervised release." Addendum 8. Jackson was convicted following a jury trial and was sentenced principally to ninety-two months in prison. He now appeals the district court's denial of his motion to suppress.

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 664 (2d Cir. 2004). Ordinarily, reasonableness requires authorities to obtain a warrant supported by probable cause before searching a private residence. *See United States v. Julius*, 610 F.3d 60, 64 (2d Cir. 2010) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).  However, the law recognizes an exception to this requirement where the government has "special needs, beyond the normal need for law enforcement." *Griffin*, 483 U.S. at 873 (internal quotation marks omitted). This exception applies to individuals, such as Jackson, who are serving a term of federal supervised release. *See id*. at 875; *see also United States v. Reyes*, 283 F.3d 446, 457–58 (2d Cir. 2002).

A releasee's expectation of privacy is further diminished where he has consented to a search condition.  *See United States v. Knights*, 534 U.S. 112, 118 (2001) (stating that the existence of a search condition is "a salient circumstance"); *United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) ("[P]ersons on supervised release who sign [waivers] manifest an

4

awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." (alterations in original) (quoting *Newton*, 369 F.3d at 665)). In light of these considerations, the Supreme Court has held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121. Under such circumstances, the Fourth Amendment does not require the officer to obtain a warrant. *Id.* at 121–22.

In evaluating whether an officer had reasonable suspicion to justify a search, courts look to the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis" to suspect the person searched of criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). A "mere hunch" is insufficient, *id.* at 274 (internal quotation marks omitted), but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.*

Jackson concedes that, pursuant to the search condition, the Probation Office could search his residence based upon "reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by [him]." App. 37. However, he argues that the facts known to Probation did not supply reasonable suspicion of any such violation or unlawful conduct. This argument is unavailing.

At the time of the challenged search, Probation was aware that Jackson, who had a history of trafficking in narcotics, had made five unauthorized trips to New York City. It was further aware that he had ridden in a vehicle with a woman who had been convicted of a drug

trafficking offense, and that she was subsequently arrested in the same vehicle while in possession of drugs and items related to drug trafficking. In addition, Probation was aware that Jackson had been stopped with a large sum of cash in small denominations on his person, lied to the police about its origins, and failed to report the stop to Probation as required by the terms of his supervised release. Even if each of these facts, viewed in isolation, would not necessarily establish reasonable suspicion that Jackson had become involved in drug trafficking, when considered in the aggregate, they certainly do. *See United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990). Accordingly, the district court properly denied Jackson's motion to suppress the evidence recovered from his residence.

We have considered all of Jackson's arguments and conclude that they lack merit. For the reasons given, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk