18-3713-cr
*United States v. Michael Elder*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand twenty.

PRESENT:   DENNIS JACOBS,
           DENNY CHIN,
           JOSEPH F. BIANCO,
                *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


UNITED STATES OF AMERICA,
                *Appellee*,

          -v-                                    18-3713-cr

MICHAEL ELDER,

                *Defendant-Appellant*.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR DEFENDANT-APPELLANT:      C. DIXON WALLACE, Law Student (Patricia
                              E. Roberts, Afton J. Paris, Law Student,
                              Natsumi Antweiler, Law Student, *on the brief*),
                              *for* the Appellate and Supreme Court Clinic,
                              William and Mary Law School, Williamsburg,
                              Virginia; and Tillman J. Breckenridge and

Pierce Bainbridge, *for* Beck, Price & Hecht LLP, Washington, D.C.

FOR APPELLEE:            TIFFANY H. LEE, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Rochester, New York.

Appeal from the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Michael Elder appeals a judgment, entered November 30, 2018, following his conviction at a jury trial, sentencing him principally to 210 months' imprisonment for possession with intent to distribute cocaine and fentanyl in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), as well as maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 856(b). On appeal, Elder challenges the district court's denial of his motion to suppress the physical evidence found during a warrantless search of his home. Specifically, Elder, who was on supervised release for a prior conviction at the time of the search, argues that the search was not supported by reasonable suspicion and thus violated the Fourth Amendment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

In 2005, Elder was sentenced to a term of imprisonment and supervised release for firearms offenses and bank robbery. After completing his prison term, he

began his supervised released under the supervision of U.S. Probation Officer James Dyckman. As a supervisee, Elder was subject to the following special search condition: "[Elder] shall submit to a search of his person, property, vehicle, place of residence or any other property under his control and permit confiscation of any evidence or contraband discovered." App'x at 19. Elder indicated by his signature that he consented to the search condition.[1] During the course of Elder's supervision, Dyckman received an email from the Drug Enforcement Agency ("DEA") advising that it had received four anonymous emails over the course of two months alleging that Elder was selling drugs from his home. On the basis of these tips, Dyckman, along with eight other probation officers and DEA agents, searched Elder's home and discovered drugs, cash, and drug paraphernalia. Following the filing of charges, Elder moved to suppress the evidence seized during the search. The district court denied the motion, holding that although the search was not supported by reasonable suspicion, Elder's special search condition authorized suspicionless searches.

---

[1]      It is not clear whether Elder understood the search condition to permit suspicionless searches. Indeed, when describing Elder's signing of the special conditions, Dyckman testified that he (Dyckman) understood the condition as "allow[ing] us to search his property, his residence that he reports to us, any property under his control upon reasonable suspicion to exercise that right." Dist. Ct. Dkt. No. 24 at 19-20.

## DISCUSSION

### I.    Standard of Review

"On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error." *United States v. Berschansky*, 788 F.3d 102, 108 (2d Cir. 2015).  Mixed questions of fact and law are reviewed *de novo*.  *Id*.

### II.    Applicable Law

The Fourth Amendment protects the right of the people to be free from unreasonable government intrusion into areas where they have "a legitimate expectation of privacy."  *United States v. Newton*, 369 F.3d 659, 664-65 (2d Cir. 2004).  Persons on supervised release have a diminished expectation of privacy.  *See United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) (noting that supervisees "who sign [waivers] manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy" (quoting *Newton*, 369 F.3d at 665)); *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) (noting that an individual on supervised release has a "diminished expectation of privacy that is inherent in the very term '*supervised* release'").

With few exceptions, a search is "not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."  *Skinner v. Ry. Labor Exec.'s Ass'n*, 489 U.S. 602, 619 (1989).   One exception to this general rule is when "special needs, beyond the normal need for law enforcement, make the warrant and probable-

4

cause requirement impracticable."  *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).

Supervision is one such special need.  *Id.* at 875.

Suspicionless searches of a parolee do not violate the Fourth Amendment if the parolee has expressly consented to them.  *See Samson v. California*, 547 U.S. 843, 846 (2006) (holding that a suspicionless search did not violate the Fourth Amendment where the defendant was a state parolee and California law required that parolees "agree in writing to be subject to search . . . with or without cause").  Though we have upheld a search premised on a search condition that did not explicitly provide for searches without reasonable suspicion, *see United States v. Massey*, there we noted that the search was in fact supported by reasonable suspicion.  461 F.3d 177, 178-79 (2d Cir. 2006).[2]  We have recognized that in monitoring individuals on supervised release, probation officers must be given "considerable investigative leeway," *United States v. Reyes*, 283 F.3d 446, 457 (2d Cir. 2002), for in bringing a supervisee's offending conduct to the attention of the court, they act as the "eyes and ears" of the court, *id.* at 455.

The fact that the Fourth Amendment has been violated does not mean that the exclusionary rule must be invoked, for exclusion is not a necessary consequence

---

[2]     We observe that the language of the search condition here deviates from the sample language for such conditions provided by both the Administrative Office of the U.S. Courts and the U.S. Parole Commission, which require reasonable suspicion for warrantless searches.  *See* Admin. Office of United States Courts Prob. and Pretrial Servs. Office, *Overview of Prob. and Supervised Release Conditions* 78-79 (2016) (warrantless searches permitted "only when reasonable suspicion exists"); U.S. Parole Comm'n R. & Proc. Man. § 2.204-18(b)(3) (2010) (releasee shall submit to searches "based upon reasonable suspicion").  The absence of such language would surely increase the risk of abuse.

5

of a Fourth Amendment violation, but rather is intended to deter "intentional conduct that was patently unconstitutional." *Herring v. United States*, 555 U.S. 135, 143-44 (2009); *see also Davis v. United States*, 564 U.S. 229, 237 (2011) (noting that while "real deterrent value is a necessary condition for exclusion . . . it is not a sufficient one"). Accordingly, "exclusion 'has always been our last resort, not our first impulse,'" and thus "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 140, 144 (internal quotation marks omitted).

## III. Analysis

As a preliminary matter, we accept for the purposes of this appeal the district court's finding that the anonymous tips did not provide reasonable suspicion for the search.

While the Supreme Court has held that the suspicionless search of a parolee does not violate the Fourth Amendment, there the operative statute clearly stated that the parolee consented to search "with or without cause." *See Samson*, 547 U.S. at 846. Here, however, Elder's search condition does not explicitly state that he is subject to search without reasonable suspicion. Neither the Supreme Court nor our Court has addressed the issue of the reasonableness of a suspicionless search of a supervised releasee's home where the supervisee did not explicitly consent to such a search.

We need not, however, decide the issue here. Even assuming that Elder's Fourth Amendment rights were violated because he did not validly consent to the suspicionless search, suppression was not warranted in light of the totality of the circumstances. Weighing the "incremental deterrent" of excluding the evidence found in Elder's home against "the substantial social costs extracted by the exclusionary rule," we conclude that, even absent reasonable suspicion and assuming a Fourth Amendment violation, the district court did not err in denying the motion to suppress. *Illinois v. Krull*, 480 U.S. 340, 352-53 (1987).

As a supervisee, Elder had a "severely diminished expectation of privacy." *Edelman*, 726 F.3d at 310. In contrast, the government's interests were substantial. The government has an "overwhelming interest" in supervising those on supervised release to "reduc[e] recividism and thereby promoting reintegration and positive citizenship" among supervisees. *Samson*, 547 U.S. at 853. Moreover, while the anonymous tips did not support reasonable suspicion, Dyckman's conduct "was rationally and reasonably related to the performance of [his] duty." *See Newton*, 369 F.3d at 666. Indeed, another law enforcement agency -- the DEA -- reported that there were four tips over the course of two months that Elder, who was under federal supervision, was engaging in the illegal distribution of drugs. Even assuming Dyckman acted unreasonably in failing to conduct further investigation before executing the search, this is not the kind of flagrant or abusive police misconduct that warrants application of the exclusionary rule. Bearing in mind that the exclusionary rule "applies only where it 'results in appreciable

7

deterrence,'" *Herring*, 555 U.S. at 141 (alteration omitted) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984), and weighing the deterrent effect against the serious cost of "letting guilty and possibly dangerous defendants go free," *United States v. Julius*, 610 F.3d 60, 66 (2d Cir. 2010) (quoting *Herring*, 555 U.S. at 141), we conclude that, in the circumstances here, the substantial social costs of suppressing the evidence obtained during the search of Elder's home outweigh the incremental deterrent value of granting it. Accordingly, we conclude that the district court did not err when it denied Elder's motion to suppress.

\* \* \*

We have considered Elder's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8